UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   1:25-mj-04411-Louis

UNITED STATES OF AMERICA

v.

RASHAWN NOEL, et al.,
          Defendants
_____/

FILED BY ____OG____ D.C.
Dec 14, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

# CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: _____
BRIAN DOBBINS
Assistant United States Attorney
U.S. Attorney's Office – SDFL
Court ID No. A5501182
99 NE 4th Street, 5th Floor
Miami, Florida 33132
Tel: (305) 961-9304
Email: Brian.Dobbins@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>RASHAWN NOEL, et al.,<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 1:25-mj-04411-Louis |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __October 31, 2025-December 12, 2025__ in the county of __Miami-Dade and Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2261A and 2<br>18 U.S.C. §§ 924(c)(1)(A) and 2 | Stalking; and<br>Possession of a Firearm in Furtherance of a Violent Crime. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Dreibelbis, Special Agent, FBI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  facetime Telephone

Date: December 14 2025

_____
*Judge's signature*

City and state: Miami, Florida      Hon. Lauren F. Louis, United States Magistrate Judge
*Printed name and title*

Print | Save As... | Attach | Reset

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan Dreibelbis, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division. My duties involve investigating various violations of federal offenses, including bank robberies, Hobbs Act robberies, extortions, kidnappings, and other violations of federal law. I have been an FBI Special Agent since February 2018, and I have been assigned to the Miami Division since May 2019. Before moving to the Miami Division, I worked as a Special Agent for a year and a half investigating narcotics trafficking violations while assigned to the New York Division of the FBI.

2. I submit this affidavit in support of a criminal complaint charging Rashawn Noel ("NOEL"), Mark-Simon Louma ("LOUMA"), and Jude Timothe ("TIMOTHE") with Stalking, in violation of Title 18, United States Code, Sections 2261A(2)(A) and 2; and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c) and 2.

3. The statements contained in this affidavit are based upon my own personal knowledge as well as information provided by other individuals, including other law enforcement officials, and my review of records obtained during the course of this investigation. I have not included in this affidavit each and every fact and circumstance known to me, but only the facts and circumstances sufficient to establish probable cause for the issuance of the requested complaint.

## PROBABLE CAUSE

4. Law enforcement learned that a drone had been flown over an identified residence

in Normandy Isles, Miami Beach, Florida, and law enforcement received a copy of the video of the identified residence taken by the drone. Based upon the video which showed a time stamp on the dashboard of a vehicle, the drone video was taken on October 31, 2025, at approximately 1:02 AM, and the drone appeared to be launched from the area of Biarritz Drive in Normandy Isles, Miami Beach. Law enforcement used this video to identify the residence on Normandy Isle (hereinafter, the "Victim's Residence"), and interviewed the occupant (hereinafter, the "Victim"). The Victim stated he was very successful in crypto currency. I know, based on other investigations and my training and experience that persons with large amounts of crypto currency are often robbery, kidnapping, or extortion targets. Furthermore, the Victim had been receiving near constant spam calls recently from someone purporting to be Google Support. I know, based on my training and experience, that criminals involved in stealing cryptocurrency attempt to first access individuals' cloud storage and e-mail accounts. They then search those accounts for saved "Seed Phrases." A Seed Phrase is akin to a password that would allow the criminals to transfer the Victim's crypto currency. Criminals frequently accomplish this step by posing as Google Support. In some cases, criminals involved in this type of scheme do not give up when they cannot obtain a seed phrase electronically. They instead contract other actors to use physical force to obtain the seed phrases from the victims. Due to the danger posed by the plot, the Victim was moved to a safe location but provided law enforcement with access to the Victim's Residence and the Victim's Vehicle.

5. Law enforcement collected surveillance video that faced the Victim Residence that showed a drone flying over the Victim Residence at 12:54 AM on October 31, 2025. Normandy Isles has License Plate Readers ("LPR") at all entrances to the islands. Those LPRs revealed a 2018 Jeep Trackhawk with Florida tag 14AQZF (hereinafter, "NOEL's JEEP," or the "JEEP")

came onto the island from the west end at 12:40 AM on October 31, 2025. The JEEP departed the island on the west end at 1:15 AM. The Victim Residence is in a gated community. Law enforcement obtained video surveillance and license plate logs from the guard gate. At 1:05 AM, on October 31, 2025, the JEEP entered the community and turned right onto the street where the Victim Residence is located. At 1:11 AM, the JEEP exited the community. The surveillance video captured the below image of the passenger in the JEEP:



6. Law enforcement recognized that individual as Rashawn NOEL. NOEL is a known 77th Street Gang Member. I know, based on prior investigations, that 77th Street is involved in cybercrimes and violent crimes. Facial Recognition also confirmed that individual pictured was NOEL. The driver of the JEEP remains unidentified. A search of law enforcement databases revealed that NOEL was issued traffic citations on October 10, 2024, and February 14, 2025, while driving the JEEP for Driving While License Suspended by the City of Miami Police Department. It should be noted that the registered owner of the JEEP also has the last name of NOEL.

7. In addition to the night of the drone flight on October 31, the JEEP entered the gated community where the Victim Residence is located on October 26, 2025, October 27, 2025, and November 3, 2025. Additionally, a review of additional security camera footage facing the Victim's Residence revealed that on November 3, 2025, the JEEP drove by and stopped in front of the Victim's Residence for a brief period of time. Based on my training and experience, I know that criminals planning a violent act like a home invasion or kidnapping often do multiple surveillance sessions prior to attempting the act.

### NOEL's Phone Records

8. Law enforcement identified phone number 954-849-6763 (hereinafter, "NOEL's Phone") as a phone used by NOEL in a law enforcement database. Law enforcement sought and obtained search warrants for historical and prospective location information for NOEL's Phone on November 8, 2025. The historical records obtained were from October 23, 2025, through November 8, 2025.

9. The historical cell site information confirmed NOEL's Phone was in the area of the Victim's Residence on October 26, 2025, October 27, 2025, October 31, 2025, and November 3, 2025. On October 31, 2025, NOEL's Phone was in the vicinity of 4957 Peacock Way, in Dania Beach, Florida (hereinafter, "LOUMA's Residence") before it departed to travel to the Victim's Residence for the drone surveillance. NOEL's phone also returned to the vicinity of LOUMA's Residence after the surveillance. Additionally, the historical cell site location information revealed that NOEL's Phone was in the vicinity of LOUMA's Residence early in the morning on October 31, November 4, November 5, November 6, and November 7, 2025.

10. Law enforcement surveilled the area of the Dania Preserve development in Dania Beach, Florida on November 7, 2025. Your affiant observed NOEL in a vehicle with LOUMA.

NOEL and LOUMA were in a black 7 Series BMW that departed a house midway through the block on Peacock Way. A short time later, the same black BMW returned and parked in front of the LOUMA's Residence. NOEL's JEEP departed Dania Preserve later on November 7, 2025, and traveled to 6130 SW 32nd Street, Miramar, Florida (hereinafter, the "32nd Street Residence"). Surveillance was discontinued shortly thereafter.

11. A review of NOEL's PHONE records revealed he regularly contacted 786-806-7394 (hereinafter, "LOUMA's Phone"). LOUMA provided this phone number to law enforcement in May 2025 when his car was damaged by a valet in Miami, FL.

### The UPS Package

12. On November 18, 2025, law enforcement learned of a UPS parcel that was shipped from China to an address in Miami, Florida. The parcel was believed to contain electronic devices, commonly known as "jammers," that block the WiFi system that security cameras are connected to in order to prevent the security cameras from communicating with the security system. Prior to the parcel's arrival, law enforcement had obtained a search and seizure warrant for the parcel (25-mj-04214-SANCHEZ), as well as a warrant authorizing a tracking device to be installed on the jammers (25-mj-04215-SANCHEZ). Law enforcement seized the parcel and searched it pursuant to the search warrant. The parcel contained three different signal jamming devices. Pursuant to the tracking warrant, GPS tracking devices were installed in all three jamming devices. At approximately 5:30 PM on November 18, 2025, the FBI conducted a controlled delivery of the parcel to the delivery address in Miami. An FBI Undercover Employee ("UCE") posing as a UPS delivery person put the package on the front porch. The UCE did not interact with any residents.

13. On November 19, 2025, law enforcement conducted surveillance of the movements of the jamming devices using the GPS tracking information. The jamming devices were eventually

delivered to the 32nd Street Residence. NOEL's JEEP had been observed parked at the 32nd Street Residence during the morning on November 19, 2025. NOEL's JEEP was still present when the jamming devices arrived. Furthermore, NOEL's Phone's geographic location information showed his phone was in the area of the 32nd Street Residence. Approximately one hour later, still on November 19, 2025, NOEL's JEEP departed the 32nd Street Residence and traveled to the neighborhood in which LOUMA's Residence is located. Geographic location information for NOEL's Phone indicated his phone moved with NOEL's JEEP. The GPS Trackers on the jamming devices did not depart the 32nd Street Residence.

### Jude TIMOTHE and the November 23 Drive-by

14. A review of the historical toll records for NOEL's Phone revealed that NOEL's Phone had contacted a phone associated with TIMOTHE, 786-616-1725 (hereinafter, "TIMOTHE's Phone") on ten (10) occasions between October 23, 2025, and November 7, 2025. Law enforcement associated TIMOTHE's Phone with TIMOTHE based upon the fact that TIMOTHE's Phone is associated with the account "Jude Tim" on CashApp. The display photo for that account is a picture of TIMOTHE. Furthermore, TIMOTHE's Phone is linked to TIMOTHE in two law enforcement databases. NOEL's Phone and TIMOTHE's Phone were in contact on October 27, October 31 (approximately 30 minutes before the drone flight), and November 3, 2025. On November 3, 2025, NOEL's PHONE was in the area of the Victim's Residence when it called TIMOTHE.

15. Law enforcement sought and received a search warrant for historical cell site information for TIMOTHE's Phone (25-MJ-4298-LETT). Those records revealed that TIMOTHE's Phone was in the area of the Victim's Residence on October 27, 2025.

16. Further research into TIMOTHE revealed he runs an Instagram page in which he

takes drone video of youth sports games. The page shows TIMOTHE has access to a drone capable of doing the type of surveillance that was accomplished on October 31, 2025.

17.     On November 23, 2025, law enforcement learned that NOEL's Phone was in the area of the Victim's Residence and then traveled to the North Beach area of Miami Beach. Law enforcement located NOEL's JEEP in the area of 71st Street and Collins Avenue and initiated surveillance. NOEL, TIMOTHE, and two minor children were located on Miami Beach. They then returned to NOEL's JEEP and entered it, with NOEL driving. The JEEP drove away from Miami Beach along 71st Street, which runs through Normandy Isles. Instead of proceeding out of Normandy Isles back towards the mainland where TIMOTHE and NOEL both live, NOEL's JEEP turned onto Biarritz Drive and drove into the gated neighborhood in which the Victim's Residence is located. NOEL's JEEP turned around shortly after passing the Victim's Residence, and drove past the Victim's Residence again before leaving Normandy Isles.

### December 5, 7, and 8 Surveillances and the MERCEDES

18.     On December 5, 2025, at approximately 11:31 PM, law enforcement noted that geographic location information for NOEL's Phone revealed that it was in the area of North Bay Village. Law enforcement attempted to begin a surveillance and locate NOEL, but NOEL's Phone had moved away from the area of the Victim's Residence by the time officers reached the area.

19.     On December 7, 2025, at approximately 7:00 PM, law enforcement noted one of the GPS-tracked jamming devices was moving south on Interstate 95. According to geographic location information, NOEL's Phone also moved in a similar pattern as the jamming device. The GPS trackers in two of the three jamming devices had significant issues reporting their location and sometimes could not connect to the network, resulting in breaks in time when the jammers provided location information to law enforcement. However, law enforcement was able to

continue to obtain geographic location information for NOEL's Phone. At approximately 8:05 PM, geographic location information for NOEL's Phone revealed it was in the immediate vicinity of the Victim's Residence.

20. On December 8, 2025, at approximately 6:30 AM, one of the GPS-tracked jamming devices reported it was on Highway 441 near County Line Road. At approximately 8:30 AM, the device reported it was in the vicinity of the 32nd Street Residence. On December 8, 2025, at 7:57 AM law enforcement observed a 2019 black Mercedes Benz GT 63, bearing Florida license plate number RYAY28 (hereinafter, the "MERCEDES"), parked outside the 32nd Street Residence.

21. Using the license plate, the historical phone activity, and the GPS tracker information from the jamming devices, law enforcement researched the movement of the MERCEDES from December 5 through December 8. The MERCEDES entered the neighborhood where the Victim's Residence is located on December 5, 2025, at 11:24 PM, and exited the neighborhood at 11:29 PM. This was consistent with the movement revealed by the geographic location information for NOEL's Phone during that time frame on December 5, 2025. On December 7, 2025, the MERCEDES entered the neighborhood where the Victim's Residence is located at 7:58 PM and exited at 8:14 PM. Again, this was consistent with the movement of NOEL's Phone revealed by the geographic location information. On December 8, 2025, the MERCEDES entered the neighborhood where the Victim's Residence is located at 4:01 AM and exited the neighborhood at 4:08 AM. This was consistent with the movement of the jamming devices before they returned to the 32nd Street Residence where the MERCEDES was observed later that morning at 7:57 AM.

22. Law enforcement collected surveillance video from the vicinity of the Victim's Residence. These cameras showed that at 4:03 AM on December 8, 2025, a vehicle that appeared

to be the MERCEDES parked outside the Victim's Residence and an unknown subject (hereinafter, the "UNSUB") walked from the MERCEDES and approached the Victim's Vehicle. The UNSUB appeared to bend down under the Victim's Vehicle. The UNSUB then returned to the vehicle that appeared to be the MERCEDES.

23. Law enforcement also reviewed surveillance video facing the Victim's Residence which showed that a drone flew over the Victim's Residence at approximately 4:05 AM on December 8, 2025. At 3:12 AM, prior to the drone flight, NOEL's Phone called the TIMOTHE Phone. The geographic location information for NOEL's Phone then traveled to the area of TIMOTHE's Residence, located at 314 NW 85th Street in Miami.

24. Based on these time-correlations with the above-described phone location and tracker activity, and because the MERCEDES was parked at the 32nd Street Residence, I believe the MERCEDES was used to surveil the Victim's Residence on December 5, 7, and 8, 2025. I further believe the drone from December 8, 2025, was launched by occupants of the MERCEDES, and that the UNSUB on foot came from the MERCEDES.

### The UNSUB Installed a GPS Tracker on the Victim's Vehicle

25. Later on December 8, 2025, law enforcement searched the bottom of the Victim's Vehicle based off the video showing the UNSUB bending over under the Victim's Vehicle, and law enforcement located a magnetically attached GPS tracking device. Your affiant had searched the Victim's Vehicle on November 23, 2025, for a GPS tracker, and none was present at that time. Your affiant knows, based upon training and experience, that the GPS tracker that was attached to the Victim's Vehicle transmits the GPS location for the tracking device to an internet application on a cellular telephone or an internet website, where a user can access the location of the tracking device.

26. Law enforcement learned that NOEL flew to Jamaica on December 8, 2025, with a scheduled return date of December 11, 2025. Geographic location information for NOEL's Phone also revealed that NOEL'S Phone was located in Jamaica. Later on December 8, 2025, law enforcement drove the Victim's Vehicle with the UNSUB's GPS Tracker still affixed. While driving the vehicle, law enforcement obtained emergency disclosures of the MERCEDES' location using geographic location information. Law enforcement began driving the vehicle at approximately 7:30 PM. At 7:45 PM, NOEL's Phone called LOUMA's Phone. At 7:46 PM, LOUMA's Phone called NOEL's Phone back. At 8:09 PM, NOEL's Phone again called LOUMA's Phone. Law enforcement drove the Victim's Vehicle on two occasions on December 8, 2025. On both occasions, the MERCEDES was located in Broward County when law enforcement began moving the Victim's Vehicle. On both occasions, the MERCEDES began traveling at a high rate of speed from Broward County all the way to the area of the Victim's Residence. During the first trip, the MERCEDES departed a Longhorn Steakhouse in Pembroke Pines, drove onto Normandy Isle, and circled the area briefly. The MERCEDES then traveled to LOUMA's Residence. During the second trip, the MERCEDES departed LOUMA's Residence, drove onto Normandy Isle, entered the neighborhood where the Victim's Residence is located, drove past the Victim's Residence, before turning around and driving past the Victim's Residence again, and then exiting the neighborhood. The MERCEDES then waited for approximately one hour immediately outside the Victim's neighborhood before returning to LOUMA's Residence. I believe, based on my training and experience, that the MERCEDES was waiting for the Victim's Vehicle to exit the neighborhood again so it could follow the Victim's Vehicle and attempt a robbery or kidnapping.

27. On December 10, 2025, law enforcement sought and obtained a tracking warrant

for the GPS Location information for the MERCEDES (25-mj-04366-TORRES and 25-mj-04367-TORRES). This information revealed the MERCEDES spent the early morning of both December 10 and 11 at LOUMA's Residence. On December 10, 2025, law enforcement surveilled the MERCEDES, and LOUMA was observed operating the MERCEDES alone.

### NOEL and LOUMA Followed the Victim's Vehicle on December 12, 2025

28. On December 11, 2025, NOEL returned to the Southern District of Florida from Jamaica. On December 12, 2025, your affiant began driving the Victim's Vehicle from the Victim's Residence. The UNSUB's GPS tracking device was still affixed to the Victim's Vehicle. Your affiant drove across the 79th Street Causeway and proceeded along 82nd Street to I-95. While on I-95 North, at approximately Pembroke Road, law enforcement surveillance saw NOEL's JEEP depart from LOUMA's Residence. NOEL's JEEP proceeded south on I-95 and drove at a high rate of speed and then exited onto Sheridan Street. NOEL's JEEP then went back onto I-95 North and pulled onto the shoulder. Your affiant exited I-95 North onto Sheridan Street East, then made a U-turn on Sheridan Street to proceed westbound on Sheridan Street. NOEL's JEEP then exited I-95 North onto Stirling Street and drove westbound, which followed your affiant in the Victim's Vehicle in a parallel route. Your affiant parked the Victim's Vehicle at a KFC located at Sheridan Street and State Road 7 and entered a law enforcement vehicle.

29. Approximately thirty seconds after your affiant parked and exited the Victim's Vehicle, a black BMW, with Florida license plate number B294IP (hereinafter, the "BMW"), drove into the KFC parking lot, stopped in view of the Victim's Vehicle, and then reversed into a parking spot that maintained a view of the Victim's Vehicle. Shortly thereafter, NOEL's JEEP arrived at the KFC parking lot and parked with a view to the Victim's Vehicle. NOEL's JEEP sat for a short period of time, and then NOEL exited the driver's door of the JEEP and walked into

the KFC. NOEL stayed in the KFC for approximately fifteen minutes. During that time, no one left the BMW, and its lights indicated it was on. NOEL then exited the KFC with a bag containing food and reentered the JEEP. NOEL's JEEP stayed stationary for a period of time after NOEL reentered.

30. Eventually, both the BMW and NOEL's JEEP left the KFC parking lot, but NOEL's JEEP continually drove past the area and parked several times in view of the Victim's Vehicle for approximately an hour. Law enforcement learned that the BMW is a rental vehicle owned by Sixt Rental. Sixt Rental provided GPS tracking information for the BMW, which showed that after the BMW departed the KFC parking lot, it was parked at 3829 Hollywood Boulevard in Hollywood, Florida. Based on my training and experience and the activity displayed by the subjects in the case, I believe the BMW occupants were positioning themselves to get onto I-95 South if the Victim's Vehicle proceeded in that direction to return to the Victim's Residence. I further believe, based on my familiarity with surveillance tactics, that NOEL's JEEP was maintaining visual contact with the Victim's Vehicle to relay to the occupants of the BMW which direction the Victim's Vehicle was travelling. NOEL's JEEP also circled the area repeatedly and checked nearby parking lots. Based upon this activity, I believe NOEL was searching for the Victim.

31. Law enforcement prepared to stop NOEL's JEEP at a Mobil gas station. NOEL entered the Mobil for approximately ten to fifteen (10-15) seconds, and then NOEL returned to his vehicle. NOEL appeared to notice the unmarked law enforcement vehicle, and then NOEL's JEEP quickly departed the gas station. NOEL then circled the area again in the JEEP and returned to the gas station. NOEL's JEEP then exited the gas station, and NOEL appeared to notice the same law enforcement vehicle from a distance. NOEL then departed the area and drove NOEL's JEEP to

the 32nd Street Residence. NOEL was taken into custody in the JEEP in front of the 32nd Street Residence. As law enforcement converged on the 32nd Street Residence, the BMW was located nearby and sped away at a high rate of speed after NOEL was apprehended.

32. Inside the JEEP, law enforcement located a firearm tucked between the driver's seat and the console. In the trunk, law enforcement located two masks. Based upon my training and experience, I know that masks and firearms are common items used in kidnapping, stalking, carjacking, and other violent crimes.

33. The BMW traveled to the LOUMA's Residence, and then the BMW departed again quickly. As the BMW departed, law enforcement approached and went past the BMW. The BMW then led law enforcement on a high-speed chase through Broward County, during which the BMW rammed a Broward Sheriff's Office police vehicle. At one point, the passenger in the BMW jumped out of the vehicle and ran away. That individual was not apprehended, and their identity is unknown at this time. LOUMA was driving the BMW, and LOUMA also tried to jump out of the vehicle and run away before being apprehended.

34. Law enforcement obtained a search warrant for the 32nd Street Residence (25-6730-MJ-STRAUSS). During the search, law enforcement recovered the three tracked jamming devices, as well as an additional jamming device from the 32nd Street Residence. Law enforcement also recovered NOEL's Phone when he was apprehended.

### TIMOTHE's Arrest

35. Law enforcement obtained a search warrant to search TIMOTHE's Residence, located at 314 NW 85th Street in Miami (25-mj-04410-TORRES). During the search, law enforcement recovered a number of drones from the Residence. TIMOTHE was contacted on TIMOTHE's Phone, and law enforcement requested that TIMOTHE return to his residence. When

13

TIMOTHE arrived approximately an hour and a half later, TIMOTHE was advised of his *Miranda* rights, which he agreed to waive and answer questions.  TIMOTHE told law enforcement that the drones belonged to him, and he used them for his business.  TIMOTHE initially denied knowing NOEL or being in Miami Beach for the last three months, despite the fact that law enforcement had observed NOEL and TIMOTHE together as they drove past the Victim's Residence on November 23, 2025, after they visited Miami Beach.  TIMOTHE also told law enforcement that he no longer had TIMOTHE's Phone, because he threw it out his car window after law enforcement requested he come home.

36. After further questioning, in sum and substance, TIMOTHE admitted to law enforcement that he flew a drone over the Victim's Residence on three separate occasions, including October 31, 2025 (the night of the video law enforcement received) and December 8, 2025 (the night the GPS tracker was installed on the Victim's vehicle).

37. Based upon all of the actions taken by NOEL, LOUMA, and TIMOTHE, your affiant submits that there is probable cause to believe that they used the drones, the multiple vehicles, their cellphones, the electronic jammer devices shipped from China, and the GPS tracking device to place under surveillance the Victim in an attempt to injury, harass, and intimidate the Victim by placing the Victim in a reasonable fear of death or serious bodily injury.  Your affiant further submits that NOEL possessed the firearm found in his JEEP in furtherance of the stalking of the Victim.  NOEL, LOUMA, and TIMOTHE have no association or connection to the Victim, and their actions are consistent with a plot to either abduct, extort, or physically rob the Victim, in order to gain access to the Victim's crypto currency or other valuables.  The travel pattern of the MERCEDES on December 8, and later NOEL's JEEP and the BMW on December 12, are consistent with using the UNSUB's GPS tracking device found underneath the Victim's

Vehicle to locate, follow, and pursue the Victim's Vehicle.

## CONCLUSION

38. Based on the foregoing facts and information, I respectfully submit that there is probable cause to believe that NOEL, LOUMA, and TIMOTHE committed Stalking, in violation of Title 18, United States Code, Sections 2261A(2)(A) and 2; and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

**FURTHER AFFIANT SAYETH NAUGHT.**

---
RYAN DREIBELBIS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 via FaceTime on this 14th day of December 2025, in Miami, Florida.

---
HON. LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE